Brooks Packing Company, a Corporation v. Commissioner.
Brooks Packing Co. v. Commissioner
Docket No. 11743.
United States Tax Court
1947 Tax Ct. Memo LEXIS 192; 6 T.C.M. (CCH) 583; T.C.M. (RIA) 47143; May 29, 1947
*192 I. J. Underwood, Esq., for the petitioner. Donald P. Chehock, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determines deficiencies as follows: Declared value
Income
excess-profits
Excess
Year
tax
tax
profits tax
1940
$1,362.28
$625.74
1941
3,042.23
804.45
$5,601.63
1942
340.73
5,684.55
1943
1,552.89
8,437.68
Two issues are presented for decision - (1) whether the Commissioner erred in failing to allow the full amounts claimed in each year as deductions for officers' salaries; (2) whether he erred in failing to allow a deduction for 1943 for attorneys' fees and $10,000 paid in settlement of two law suits. Findings of Fact The petitioner is an Oklahoma corporation. Its returns, for the years here involved, were filed with the collector of internal revenue for the District of Oklahoma. It was engaged in the wholesale meat packing business in the general vicinity of Tulsa, Oklahoma. R. O. Brooks and C. W. Brooks were brothers. They had had many years experience in the meat packing business. They had not gone beyond the eighth grade in school. They formed a partnership *193 in 1934 to engage in the meat packing business. The petitioner was organized in the following year. The partnership business was conveyed to the petitioner. Two shares of stock were issued to David Hewett, an employee, and the remaining shares were divided equally between R. O. and C. W. Brooks. A. E. LeStourgeon had had many years experience in the meat packing business. He and his wife, D. B. LeStourgeon, invested $10,000 in the stock of the petitioner on June 20, 1936. Eight shares of stock were at that time issued in the name of Hewett and the remaining 405 shares were issued one-third to R. O. Brooks, one-third to C. W. Brooks, and one-third to D. B. LeStourgeon and A. E. LeStourgeon or survivor. Thereafter, additional shares were issued from time to time, and aside from a few issued to Hewett, the rest were divided one-third to the LeStourgeons and one-third to each of the Brooks. Hewett, on January 4, 1942, owned 40 shares, and each of the other three blocks consisted of 353 shares at that time. The two LeStourgeons and the two Brooks entered into an agreement in June 1936, and thereafter from time to time as additional shares were issued. Each was in substance the same *194 as the one enfered into on December 10, 1936 which recited that the three interests were "to participate in the management, salaries, and otherwise, very much as though" each shared one-third in the petitioner. The agreement provided that LeStourgeon was to be president and treasurer, C. W. Brooks was to be vice president and general manager, and R. O. Brooks was to be secretary, each was to be continued at all times as a director, each was to devote his full time to the business, salaries were to be equal, and stock was to be offered first within the group before it could be disposed of outside. The three men devoted their full time and worked long hours on the affiars of the petitioner as long as they were regularly engaged in its business. A. E. LeStourgeon died early in January 1942. The three men planned to start a meat packing business in the State of Texas. C. W. Brooks left Oklahoma on or about March 21, 1941 and went to Texas where a new corporation entered into the meat packing business. He was not regularly engaged in conducting the business of the petitioner after March 21, 1941. After the departure of C. W. Brooks and after the death of LeStourgeon, R. O. Brooks assumed *195 and performed most of the duties formerly performed by them. LeStourgeon had been in charge of financing and C. W. Brooks had been in charge of the plant. A 5 per cent dividend declared in December 1942 was the only dividend regularly declared by the petitioner at any time up to December 1943. R. O. Brooks purchased all of the LeStourgeon stock (353 shares) in the spring of 1942, but the stock was held in escrow until August 1946 when it was transferred on the books to R. O. Brooks. The sales of the petitioner increased from about $339,000 in 1936 to about $1,280,000 in 1942, and then fell slightly under $900,000 in 1943. The net taxable income shown on its returns, after the deductions taken for officers' salaries, averaged about $1,450 prior to 1939, amounted to about $6,500 for 1939, $8,000 for 1940, $12,000 for 1941, $37,000 for 1942, and $8,500 for 1943. The total assets shown on the returns for the taxable years averaged about $146,000. The following table shows the amount claimed and the amount allowed in each year as salaries for the three officers: 1940
1941
1942
1943
Claimed
Allowed
Claimed
Allowed
Claimed
Allowed
Claimed
Allowed
LeStourgeon
$13,400
$10,400
$13,900
$10,400
$10,400
$10,400
C. W. Brooks
13,400
10,400
13,900
1,600
800
None
R. O. Brooks
13,400
10,400
13,900
10,400
16,100
11,700
$20,000
$15,600
*196 The Board of Directors of the petitioner regularly authorized certain salaries in advance and at the end of each year authorized a bonus. The Commissioner, in disallowing the amounts authorized as bonuses, held that they represented distributions of profits pursuant to the agreement executed by the three officers on December 10, 1936. He also held that C. W. Brooks rendered no services after February 1941 and no amount representing compensation to him for services rendered after that date was deductible. Reasonable compensation for personal services actually rendered by C. W. Brooks during 1941 * is $2,600. Otherwise the amounts allowed by the Commissioner represent reasonable compensation for personal services actually rendered by the three officers during the taxable years. C. W. Brooks was not elected a director or an officer at meetings held in January 1942. He entered suit in February 1942 in the Oklahoma courts against the petitioner and others praying for damages and for specific performance of the contract then in effect relating to participation in the petitioner. He appealed to *197 a higher court after the lower court had held against him. He instituted a somewhat similar suit in the federal district court in January 1943 while his appeal in the state court was still pending. All of this litigation and all of the claims of C. W. Brooks were settled by an agreement in 1943 under which the petitioner purchased for $57,500 all, 353 shares, of its stock owned by C. W. Brooks and paid him $10,000 in that year to dismiss the suits. It also paid its attorneys' fees of $720.65 in 1943 for services in connection with the suits and the settlement. The suits were interfering with and affecting adversely the business of the petitioner because of gossip and comments in newspapers and over the radio. The petitioner claimed a deduction of $10,720.65 on its return for 1943 as ordinary and necessary expenses, representing the expenditures mentioned above. The Commissioner disallowed the deduction on the ground that the litigation was not incurred in and did not proximately result from the conduct or operation of its business. The amounts were ordinary and necessary expenses of the petitioner's business for 1943. The stipulation of facts is incorporated herein by this reference. *198 Opinion MURDOCK, Judge: The officers whose salaries are in controversy owned and completely controlled the petitioner. Their salaries were equal until LeStourgeon died and the controversy arose with C. W. Brooks. They had a written agreement that their salaries and other interests in and benefits from the petitioner were to be equal. Only one dividend was declared up to the close of the last taxable year here in controversy. The Commissioner has determined that a part of the amounts claimed to be deductible as officers' salaries were in reality a distribution of profits. Therefore, it is particularly appropriate to scrutinize carefully the acts of these three men and the other evidence in the case on this point. There is some opinion evidence which tends, to a degree, to support the entire amounts claimed, but it is not as extensive or as convincing as it well might have been. These three men were experienced in the business which they were conducting for the petitioner. They worked long hours. They had received substantial salaries in the past. However, the deductions allowed by the Commissioner represent quite substantial salaries, even for the period when R. O. Brooks was *199 the sole executive officer of the petitioner. Incidentally, the evidence shows that the duties decreased somewhat due to the war in 1942 and 1943, despite the annoyance of government regulations. R. O. Brooks conceded, in the course of his testimony, that the bonuses were not actually paid but were credited against the purchase of additional stock by the three stockholding interests. The stipulation bears this out. This circumstance is not without significance in view of the planned equality of those interests. This was not a personal service business and some reasonable return on the investment must be considered. All of the evidence in the case has been carefully considered in reaching the conclusion that the determination of the Commissioner was proper, except that he was apparently mistaken and thought that C. W. Brooks had ceased his active participation in February, whereas he continued until the 21st of March. The remaining question is whether the petitioner is entitled to deduct $10,720.65 for 1943 representing attorneys' fees and amounts paid in settlement of two law suits brought by C. W. Brooks. The respondent questions in his brief whether the $10,000 was actually paid *200 in settlement of law suits. He argues that it was paid for C. W. Brooks' stock. The evidence on this is not too clear but fairly preponderates in favor of the conclusion that the $10,000 was paid in settlement of the two law suits. The settlement of those two law suits did not result in the acquisition of any capital asset by the petitioner. Yet, the respondent argues that the amount in controversy is not deductible as an ordinary and necessary expense. It does not appear that C. W. Brooks had any real claim for damages against the petitioner. Nevertheless, he named the petitioner as a defendant in each suit, along with the other parties, and the suits became embarrassing to the petitioner. The testimony is that they definitely interfered with the regular conduct of its business. It may be that such suits are unusual. Still, they did occur in the ordinary course of the petitioner's business. The amounts in controversy were incurred in and proximately related from [to] the conduct of that business. A finding has been made that they were deductible as ordinary expenses of the business for 1943, the year in which they were paid. Decision will be entered under Rule 50. Footnotes
*. As amended by Tax Court order dated June 18, 1947. Originally read "1942." - CCH.↩